**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA**      :      **3:CR-21-287**

              **v.**      :      **(JUDGE MANNION)**

**JAMES J. PEPERNO, JR.,**      :

       **Defendant**      :

**M E M O R A N D U M**

On February 26, 2022, in this case with charges of corruption, bribery and related offenses, the government filed its Notice of Intent to Use FRE 404(b) Type Evidence regarding trial evidence of Peperno's prior mail fraud conviction and restitution obligation imposed in his 2006 criminal case. (Doc. 26). Presently before the court is the defendant James J. Peperno's April 4, 2022 motion *in limine* to preclude, under Federal Rules of Evidence 403, 404(b) and 609(b), the government from introducing at trial any evidence regarding his prior conviction for mail fraud in <u>United States v. Peperno</u>, Crim. No. 3:06-CR-135 (M.D. Pa.). (Doc. 37).[1] Peperno simultaneously filed his brief in support of his motion. (Doc. 38).

---

[1]On February 26, 2009, the court imposed the following sentence on Peperno, in case number 3:CR-06-135, for his mail fraud conviction: 33 months' imprisonment followed by 3 years of supervised release; and $708,322.45 in restitution to be paid in minimum monthly installments of $300. The balance on the restitution Peperno owed on August 5, 2013, when the court issued a summons to modify the conditions and terms of Peperno's supervision was $407,891.33. (*See* Doc. 46-1).

After being granted an extension of time, the government filed its brief in opposition to Peperno's motion *in limine* on May 2, 2022. (Doc. 46). Peperno did not file a reply brief with respect to his motion *in limine* and the time within which it was due has expired. Based on the following, Peperno's motion *in limine*, **(Doc. 37)**, will be **DENIED IN ITS ENTIRETY**.

## I.      FACTUAL AND PROCEDURAL HISTORY[2]

Peperno is charged in an Indictment filed on September 28, 2021, with the following offenses: Count One, Conspiracy in violation of 18 U.S.C. §371; Counts Two and Three, Federal Program Bribery in violation of 18 U.S.C. §666(a)(1)(B) and 18 U.S.C. §666(a)(2), respectively; Counts Four and Five, Honest Services Wire Fraud in violation of 18 U.S.C. §1343 and §1346; Count Six, Travel Act in violation of 18 U.S.C. §1952(a)( 3); Counts Seven and Eight, Money Laundering in violation of 18 U.S.C. §1956(a)(1); Count Nine, False Statement in violation of 18 U.S.C. §1001(a)(2); and Counts Ten and Eleven, Perjury in violation of 18 U.S.C. §1623(a). The Indictment also contains a forfeiture allegation. (Doc. 1).

---

[2]Since the court stated the factual and procedural background of this case in its June 21, 2022 Memorandum, (Doc. 55), denying Peperno's motion for a severance or bifurcation of Counts 9-11, (Doc. 35), it is not fully repeated herein. Also, a detailed description of the alleged facts in this case based on the Indictment and, "on the government's good faith expectation of the evidence that will be introduced at trial", are contained in the government's opposition brief. (Doc. 46 at 6-12).

## II.    LEGAL STANDARD FOR MOTION *IN LIMINE*

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Auto. Ins. Co., 2017 WL 3198006, *2 (M.D. Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." United States v. Tartaglione, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony

3

differs from what was contained in the movant's proffer.'" *Id.* (quoting Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).


### III.   DISCUSSION

Peperno's motion *in limine* is filed pursuant to Fed.R.Evid. 404(b) and 403. The motion also seeks, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Federal Rule of Evidence 404(b)(1) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show conformity therewith." However, under Rule 404(b)(2), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

"Rule 404(b) is a rule of general exclusion...." United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (citing United States v. Caldwell, 760 F.3d 267, 276

(3d Cir. 2014); United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) ("Rule 404(b) is generally a rule of exclusion.")). As such, "Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose [i.e., not to show the defendant's propensity to behave in a certain manner]." *Id.* (citing Caldwell, 760 F.3d at 276) (emphasis in original). Thus, "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *Id.* at 241.

In United States v. Repak, 852 F.3d at 240, the Third Circuit explained:

Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has "the burden of demonstrating [the evidence's] applicability." Caldwell, 760 F.3d at 276. Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction. *See* Huddleston v. United States, 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); Caldwell, 760 F.3d at 277–78.

"Intrinsic evidence need not be analyzed under Rule 404(b) because it is not '[e]vidence of any crime, wrong, or other act,' Fed.R.Evid. 404(b)(1), but rather 'part and parcel of the charged offense.'" U.S. v. Williams, 974 F.3d 320, 357 (3d Cir. 2020) (quoting United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010)).

5

However, the Third Circuit has limited "the 'intrinsic' label [to] two narrow categories of evidence: (1) where the uncharged conduct directly proves the charged offense; and (2) where it is performed contemporaneously with the charged crime and facilitate[s] the commission of the charged crime." *Id.* (internal quotation marks and citation omitted).

In Williams, *id.* the Court explained, "[t]his suggests that the nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense."

The government seeks to introduce evidence in its case-in-chief and to impeach Peperno if he testifies regarding Peperno's prior mail fraud conviction and restitution obligation arguing that it should be admissible because it is intrinsic to some of the charges contained in the Indictment, is relevant to show Peperno's motive, intent, and plan underlying the money laundering charges in Counts 7 and 8, and is *crimen falsi*.

Peperno objects to the government's Notice and in his motion *in limine* he seeks the court to prohibit the government from introducing at trial evidence regarding his prior conviction arguing that it is not intrinsic evidence under Rule 404(b) and, considered as extrinsic evidence, it is not admissible. Peperno contends that the government has failed to show "a chain of logical inferences" between the evidence of his prior conviction and the evidence related to his instant

6

charges. Peperno argues that the government's attempt to admit evidence of his prior conviction "amounts to a thinly veiled attempt to introduce evidence of [his] character in order to show that, at all times alleged in the Indictment, he was acting in accordance with that character", and that "the Government's argument that the evidence is relevant to the money laundering counts in that Peperno is concealing proceeds to protect against garnishment is akin to the tail wagging the dog" since "the gravamen of the money laundering offenses is the concealment of proceeds of the unlawful activity, to wit, the alleged bribes." (Doc. 38).

Peperno also argues that under FRE 403, in considering the evidence of his prior conviction as extrinsic to the charge offenses in Counts 7 and 8, the danger of unfair prejudice substantially outweighs the evidence's probative value since "[t]he jurors would be unfairly swayed by such evidence and [his] presumption of innocence would be unfairly compromised." (Id.).

Additionally, Peperno maintains that "the mail fraud conviction, despite being *crimen falsi*, should be excluded pursuant to Fed.R.Evid. 609(b), as it occurred in excess of 10 years ago, and its probative value, which is not supported by specific facts and circumstances, is substantially outweighed by its prejudicial effect."

## 1. Evidence is Intrinsic to Charges in Counts 9-11

Initially, the government contends that evidence of Peperno's prior conviction is intrinsic to the charges in Counts 9-11 of the present case charging Peperno with perjury and false statements regarding the allegations that he lied in a debtor's examination in November of 2019 to ascertain if he had any funds to pay the outstanding restitution he owed as part of his mail fraud sentence imposed in 2009. The government states that Peperno's prior conviction is inextricably intertwined with the instant offenses charged since it is alleged that Peperno actually had money and access to a bank account in which he deposited the money, from the bribes charged in Counts 1-3. The government contends that the evidence of Peperno's prior conviction and restitution obligation is intrinsic to the case since it "is critical to proving several elements of the charged offenses", including Count 9, making a false statement, in violation of 18 U.S.C. §1001(a)(2), because the alleged "false statement made by Peperno in his financial statement of debtor, its materiality, and its federal jurisdiction nexus are all inextricably linked to his prior mail fraud conviction and restitution obligation." (Doc. 46 at 13).

Thus, it states that this evidence of Peperno's prior conviction and restitution obligation directly proves some of the charged offenses and is intrinsic, and that this evidence is excluded from the scope of Rule 404(b).

Prior to performing the 4-step analysis under Rule 404(b), the court "must determine whether the acts in question are 'extrinsic' or 'intrinsic' to the charged

8

offense." United States v. York, 165 F.Supp.3d 267, 269 (E.D. Pa. 2015). In York,

id. at 269-70, the court explained:

> If the proffered evidence relates to acts that do not form the basis for the current prosecution, such acts are considered "extrinsic" to the charged offense, and a Rule 404(b) analysis is required. Green, 617 F.3d at 245. However, if the evidence either (1) "directly proves the charged offense," or (2) relates to an act "performed contemporaneously with the charged crime" that "facilitated the commission of the charged crime," then such an act is "intrinsic" to the charged offense, and a Rule 404(b) analysis is unnecessary. Id. at 249. See also [United States v. Davis, 726 F.3d 434, 441 n. 5 (3d Cir. 2013)] (citing Green, 617 F.3d at 248–49) ("Rule 404(b) excludes only extrinsic evidence.... It does not exclude intrinsic evidence.").

In order to prove the crime of making a false statement, in violation of 18

U.S.C. §1001(a)(2), charged in Count 9 of the Indictment, the government must

establish: (1) that the defendant made a statement or representation; (2) that

statement or representation was false; (3) that the false statement was made

knowingly and willfully; (4) that the statement or representation was material; and

(5) that the statement or representation was made in a matter within the jurisdiction

of the federal government. United States v. Moyer, 674 F.3d 192, 213 (3d Cir.

2012).

"To be material, a false statement must have a natural tendency to influence,

or be capable of influencing, the decision of the decision-making body to which it

was addressed." United States v. Johnson, 19 F.4th 248, 256 (3d Cir. 2021)

(internal quotations and citation omitted). Thus, "materiality requires evidence

showing that [the false statements] were of a type capable of influencing a

9

*reasonable* decisionmaker, and that the false statements could have bearing on an actual decision entrusted to the decisionmaker. *Id.* (internal quotations and citations omitted).

> As the government, (Doc. 46 at 13-15), explains:
>
> To prove that Peperno falsely stated he had no income, the United States must necessarily introduce the financial statements containing that misrepresentation. Those statements are on Department of Justice letterhead, bear an admonishment that false statements are punishable under 18 U.S.C. §1001, and reference the existence of a government claim or judgment against Peperno. But although the financial statements and evidence from the bribery scheme may prove the falsity of the charged statement, it is the context underlying those statements that constitutes intrinsic evidence in establishing the materiality and jurisdictional elements.
>
> Here, evidence of the restitution obligation stemming from Peperno's prior conviction (and his failure to make payments on it for over a year) will permit the jury to understand why he was compelled to submit certified financial statements in the first instance. This bears directly on the importance—and thus materiality—of him providing accurate information about his income, so that the United States could gauge whether any modification to his restitution order was warranted. Likewise, it is Peperno's very conviction and order of restitution that places his false statement within the jurisdiction of the federal government.

As such, the evidence of Peperno's prior conviction is intrinsic to Count 9 charging Peperno with making a false statement.

The evidence of Peperno's prior conviction is also intrinsic to the perjury charges alleged in Counts 10 and 11 of the indictment. In order to prove the perjury offenses, under 18 U.S.C. §1623(a), the government must prove four elements: that (1) Peperno gave testimony before any Court of the United States under oath;

10

(2) the testimony was false; (3) the false testimony was given knowingly; and (4) the subject matter of the testimony was material. *United States v. Thompson*, 513 Fed. Appx. 138, 140 (3d Cir.2013). "Materiality is not, however, a question of whether the false statements actually influenced the investigation or prosecution, but whether the false statements were 'capable of influencing' the investigation or prosecution." *Id*. Further, in United States v. Slawik, 548 F.2d at 83, the Third Circuit held that "a conviction under 18 U.S.C. §1623 may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods."

As the government, (Doc. 46 at 16), explains:

the United States will offer a witness and a transcript of Peperno's testimony to establish his misrepresentations, under oath in federal court, that he had neither income, nor access to any bank accounts. Again, evidence from the bribery scheme will demonstrate the falsity of the testimony. But to determine materiality, the jury necessarily must understand the context of the perjured testimony, just as when considering the false statement charge. The very reason for the questions posed to Peperno about income and bank accounts – the government's efforts to recover restitution for crime victims in his prior conviction – are precisely what rendered his lies material.

The court finds that evidence of Peperno's prior mail fraud conviction and restitution obligation is intrinsic to proving the elements of the false statement charge in Count 9, and the perjury charges in Counts 10 and 11, and thus beyond the scope of Rule 404(b). *See* United States v. Pharis, 298 F.3d 228, 234 (3d Cir.

2002) ("Once certain fraudulent conduct is properly included as part of the charged scheme, Rule 404(b) poses no obstacle because the evidence that is part of the charged crime does not fall under Rule 404(b).") (citations omitted).

Additionally, under Rule 403, evidence of Peperno's prior conviction and restitution obligation is also admissible. "The fact that the evidence is intrinsic establishes its probative nature, and ... any evaluation of prejudicial effect here must be considered in the context of the totality of the evidence produced." Williams, 974 F.3d at 357. Based on the court's discussion above, its review of the Indictment and the government's Rule 404(b) Notice with respect to this evidence, (Doc. 26), it plans to introduce at trial, the jury will hear evidence of Peperno's prior conviction and restitution obligation with respect to Counts 9-11 and, as discussed below, with respect to Counts 7 and 8. As such, the court, in balancing the probative value of the stated proposed evidence and the danger of its prejudice finds that the evidence's probative value is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

To minimize potential prejudice to Peperno, the government represents, (Doc. 46 at 17), that it "does not intend to explore the circumstances underlying Peperno's prior conviction, and need not even identify it as one for 'mail fraud'", and that "[it] seeks only to establish that Peperno was subject to a restitution

obligation ordered pursuant to a prior federal conviction." The government also indicates that "[r]eferences to the specific charge, the jail time Peperno served, and other similar information will be redacted from the trial exhibits."[3]

### 2. Mail Fraud Conviction and Restitution Obligation Are Admissible Under Rule 404(b) for Counts 7 and 8

Peperno also seeks to preclude the government from introducing evidence in its case in chief regarding his prior mail fraud conviction and restitution obligation arguing that it is inadmissible under Rule 404(b) as evidence of other bad acts. Peperno argues that such evidence is unduly prejudicial, irrelevant and immaterial to any of the charged counts, including Counts 7 and 8, and that the government should be precluded from introducing this evidence pursuant to Fed.R.Evid. 404(b). Thus, Peperno contends that the other-acts evidence will be offered by the government for a propensity purpose and that it should be precluded under FRE 404(b)(1). The government counters that while this evidence is not intrinsic regarding its proof of Counts 7 and 8, this evidence should be admissible under

---

[3]As Peperno requests, the court will also give the jury Third Circuit Model Criminal Jury Instruction §4.35 for Rule 404(b) evidence regarding his prior conviction and restitution obligation to limit any prejudice to him. Included in this charge, the court will remind the jury that defendant Peperno is on trial here only for the charges in the Indictment, not for these other acts, and to caution them not to return a guilty verdict unless the government proves the crimes charged in the Indictment beyond a reasonable doubt.

13

Rule 404(b) since it is relevant to show Peperno's motive, intent, and plan underlying the money laundering charges in Counts 7 and 8.

Counts 7 and 8 of the indictment charge Peperno with money laundering, in violation of 18 U.S.C. §1956(a)(1). Specifically, as the government summarizes, (Doc. 46 at 19-20), "[Peperno] is charged with concealing his portion of the bribe payments by depositing the cash in his parents' bank account, thus comingling it with legitimate funds." (*See also* Doc. 26 Rule 4040(b) Notice). To prove a defendant engaged in money laundering under 18 U.S.C. §1956(a)(1)(B)(i), the government must establish:

> (1) an actual or attempted financial transaction; (2) involving the proceeds of [a] specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) ... knowledge that the transaction [was] designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of [a] specified unlawful activity.

United States v. Richardson, 658 F.3d 333, 337-38 (3d Cir. 2011)

Since evidence of Peperno's prior conviction and restitution obligation does not intrinsically prove any of the elements for a money laundering charge, the court must perform the 4-step analysis under Rule 404(b). *See* United States v. York, 165 F.Supp.3d 267, 269 (E.D. Pa. 2015) ("If the proffered evidence relates to acts that do not form the basis for the current prosecution, such acts are considered 'extrinsic' to the charged offense, and a Rule 404(b) analysis is required.").

The court finds that evidence of Peperno's prior conviction and restitution obligation is relevant to proving the fourth element of money laundering by showing his motive, intent, and plan to conceal the money he received from the alleged bribery scheme. As the government states, (Doc. 46 at 20), "not only did secreting cash in [Peperno's] parents' bank account hide his cut of the [alleged] bribery scheme, but it also shielded those assets from garnishment to satisfy his outstanding restitution obligation."

As the government explains, (Doc. 46 at 21-22), this evidence is also relevant as follows:

> the jury may infer that because Peperno still owed approximately $395,000 on his pre-existing restitution obligation, he sought to conceal his proceeds of the [alleged] bribery scheme from the government, to avoid garnishment or modifications to his order of restitution. Likewise, the jury may infer that Peperno concealed the cash in his parents' bank account, failed to disclose it on his financial statements, and lied about having any income during his [November 2019] debtor's examination testimony, to avoid having to explain why and how he had come into possession of approximately $6,000 in cash.

As such, the 4-part analysis required for Rule 404(b) evidence is satisfied and the government will be allowed to bring in the relevant evidence regarding Peperno's outstanding restitution obligation which is offered for the above stated permissible, non-propensity purpose.

Peperno also argues that if the proffered evidence is allowed it must be balanced under FRE 403 and it should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice.

15

No doubt that the proffered evidence is prejudicial to Peperno. "Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." United States v. Bailey, 840 F.3d 99, 119 (3d Cir. 2016) (citation omitted).

In this case, the evidence regarding Peperno's prior conviction and restitution obligation is highly probative of the money laundering charges and the attempt by Peperno to secret the money he received from the bribe scheme alleged in the Indictment. "The prejudice against which Rule 403 guards is unfair prejudice—prejudice of the sort which clouds impartial scrutiny ... the fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403." York, 165 F.Supp.3d at 271 (quoting United States v. Starnes, 583 F.3d 196, 215 (3d Cir. 2009)). Nor is damaging evidence "necessarily excludable evidence." *Id.* Thus, in weighing the evidence of Peperno's other bad acts, the court finds that its highly probative value outweighs its prejudicial effect and therefore is admissible under Rule 403. *See* Bailey, 840 F.3d at 119 ("evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value", and "when evidence is highly probative, 'even a large risk of unfair prejudice may be tolerable.'") (internal citations omitted).

As indicated above, in order to reduce the risk of undue prejudice regarding its evidence of Peperno's prior mail fraud conviction and restitution obligation, the government states that during its case-in-chief it will only establish that Peperno was subject to a restitution obligation ordered pursuant to a prior federal conviction. The court will also give the jury the model jury instructions that the proffered evidence "is to be considered only for the proper purpose for which it was admitted." *See* 3d Cir. Model Instructions §4.29.

### 3. Use Peperno's Mail Fraud Conviction for Impeachment Purposes

Finally, in his motion *in limine*, Peperno seeks to preclude the government under FRE 609 from introducing evidence regarding his prior mail fraud conviction because it is over 10 years old.

Federal Rule of Evidence 609 pertains to the use of a witness's prior convictions for impeachment purposes and provides:

The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

17

Fed.R.Evid. 609(a)(1)(B).

No doubt that "Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only 'if the probative value of the evidence outweighs its prejudicial effect to that defendant.'" U.S. v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014) (citing Fed.R.Evid. 609(a)(1)(B)). The Third Circuit has held that this Rule "reflects a heightened balancing test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." *Id.* (citation omitted). "When offering a prior conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B)." *Id.* at 289.

The Third Circuit has "recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test." *Id.* at 286. The four factors are: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." *Id.* at 286 (citing Gov't of Virgin Islands v. Bedford, 671 F.2d 758, 761 n. 4 (3d Cir. 1982)).

18

"The Government bears the burden of demonstrating the probative value of the prior conviction outweighs its prejudicial effect." United States v. Wilson, 2016 WL 2996900, *2 (D. N.J. May 23, 2016) (citing Bedford, 671 F.2d at 761). "The defendant is then permitted to rebut the Government's presentation, explicating the potentiality for unfair prejudice from admission of the evidence." Id. (citation omitted).

Peperno's relevant prior conviction which the government seeks to use to impeach him if he testifies is his 2009 mail fraud conviction in case number 06-CR-135, M.D. Pa. The government argues that the defendant's previous felony conviction for mail fraud is admissible for impeachment purposes as a crime involving "deceit and dishonesty", i.e., *crimen falsi*. The defendant contends that his prior conviction is over 10 years old and, that even if this crime involved a dishonest act or false statement, the government must still show that the probative value of this conviction substantially outweighs the prejudicial effect under F.R.E. 609.

The court will now consider all of the Bedford factors with respect to Peperno's prior mail fraud conviction imposed on February 26, 2009. Peperno was released from prison on August 15, 2011.

In considering the first factor regarding the kind of crime involved, "courts consider both the impeachment value of the prior conviction as well as its similarity

19

to the charged crime." Caldwell, 760 F.3d at 286. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." Id. "With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." Id. "Generally, where the crime is punishable by a sentence of more than one year imprisonment, or if the crime involved required proof of a dishonest act or false statement by the witness, such evidence must be admitted for impeachment purposes." Klatch-Maynard v. Sugarloaf Tp., 2013 WL 1789744, *3 (M.D. Pa. April 26, 2013) (citing Fed.R.Evid. 609; Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)). When considering this factor, "the court asks whether the past conviction involved dishonesty, false statements, or any other offense in the nature of *crimen falsi*." Id. at *4 (citing Walker v. Horn, 385 F.3d 321, 334 (3rd Cir. 2004)). "Crimes of this nature are believed to have a high value of impeachment—the only proper purpose served by admitting past convictions—because they bear directly on a witness's propensity to testify truthfully." Id. (citations omitted).

The government contends that mail fraud is admissible as a crime of dishonesty or false statement under Rule 609(a)(2) since it involved a fraudulent scheme to defraud investors and involved elements of misrepresentations. In

reviewing Count I, the mail fraud charge of the Indictment in Peperno's case 06-CR-135, (Doc. 1), to which he pled guilty, it is quite apparent that his conviction involved a fraud scheme with extensive deceit in obtaining client funds for the purported purpose of investing and managing the funds when in fact he failed to invest the funds and converted portions of the funds to his own use. (Doc. 1 at 1-6). The court does not repeat the facts contained in Count I of the Indictment and incorporates them herein by reference. It is clear that Peperno's mail fraud conviction involved an attempt to obtain client funds and abuse his position of trust in order to deceive the clients about their investments that has substantial probative value. *See* United States v. Blakeslee, 2010 WL 1416840, at *2 (M.D. Pa. April 5, 2010) ("Crimes of stealth, such as theft or burglary, have also been found to reflect a significant lack of credibility."); *see also* United States v. Guerrier, 511 F. Supp. 3d 556, 563-64 (M.D. Pa. 2021) (court found that Pa. receiving stolen property convictions over 10 years old "have greater impeachment value since they imply dishonesty."). Also, as the government points out, (Doc. 46 at 26-27), since "[Peperno's] prior conviction is dissimilar to [his] current charges (including an honest services wire fraud charge premised on a bribery, not investor fraud, theory), the potential prejudicial impact is lessened." (citing Caldwell, 760 F.3d at 286-87). As such, the court finds that the balance of the first Bedford factor weighs in favor of admissibility of Peperno's mail fraud conviction.

21

The second factor, the age of the prior conviction, appears to weigh against admissibility since Peperno's mail fraud conviction that occurred beyond the 10-year-lookback period, i.e., Peperno was sentenced on February 26, 2009, and he was released from confinement on August 15, 2011. Peperno's prior mail fraud conviction is presumptively excluded unless a special balancing of its probative value compared to its prejudicial effect under Rule 609(b) overcomes the presumption. Caldwell, 760 F.3d at 287. In particular, "[a] conviction over ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantial outweighs its prejudicial effect." United States v. Jessamy, 464 F.Supp.3d 671, 674 (M.D. Pa. 2020) (citing Fed.R.Evid. 609(b)). "Thus, convictions over ten years old are only to be admitted in exceptional circumstances and the Rule 403 balancing is reversed", i.e., "under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, [but] for convictions over ten years old, the probative value of the conviction must substantially outweigh the prejudicial effect." *Id.*

Here, it will be 10 years and 11 months between Peperno's release from confinement on his mail fraud sentence and the trial date in this case of July 11, 2022, putting him "only slightly past the ten-year time limit in Rule 609." United

22

States v. Carey, 2019 WL 6492566, at *7 (M.D. Pa. Dec. 3, 2019) (court admitted prior conviction when the time period between the conviction and trial was 10 years and 10 month).

The court finds that the probative value of Peperno's 2009 mail fraud conviction remains undiminished since his release date from prison is only "slightly outside of the 10-year period. As such, the second factor weighs in favor of allowing the government to impeach Peperno with his mail fraud conviction if he testifies. *See* United States v. Carey, 2019 WL 6492566, *7 (M.D. Pa. December 3, 2019) (court found that drug trafficking conviction outside ten-year "look back" period to be "highly probative" and "substantially outweigh[ing] any prejudicial effect").

"The third factor inquires into the importance of the defendant's testimony to his defense at trial." Caldwell, 760 F.3d at 287. "If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." *Id.* (citation omitted). Thus, "[i]f a defendant's testimony is important to his defense, this factor weighs against admitting a prior conviction." Wilson, 2016 WL 2996900, *3 (citation omitted). However, "[if] the defense can establish the subject matter of the defendant's testimony by other

23

means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." Caldwell, 760 F.3d at 288 (citation omitted).

In its brief, (Doc. 46 at 27-28), the government states that:

At trial, the United States expects to introduce hours of recordings of phone calls and meetings that Peperno had with both Individual #1 and Semenza. During those recordings, and as alleged in the indictment, Peperno discusses, on numerous occasions, obtaining cash payments from Individual #1 to secure official acts from Semenza and other public officials. The recordings likewise contain Peperno's discussions with Semenza about the officials acts he was to perform on Individual #1's behalf, and their plans to meet for Peperno to hand over the bribe money. The government will introduce extensive text messages between the three parties, including ones in which Peperno unmistakably offers things of value to Semenza in exchange for official acts, and even the email communications between the two where Peperno sends Semenza talking points to present to the Old Forge Borough Council.

For the money laundering charges, the United States will introduce bank records, surveillance, and the recovery of prerecorded funds through pure documentary evidence. Likewise, the false statement and perjury charges will be established through Peperno's written financial statements, and a transcript of his testimony.

Thus, the government, (Id. at 28-29), contends that "none of the substantive facts underlying the charges is somehow dependent on disputed witness testimony", and that "the facts will effectively be undisputed, permitting Peperno to assert his interpretation of those facts—and thus his defense—through cross-examination and argument."

Peperno's testimony in this case appears to be less important to demonstrate the validity of his defense since he "'can establish the subject matter of [his]

24

testimony by other means, [and] [thus] [his] testimony is less necessary, so a prior conviction is more likely to be admitted.'" Caldwell, 760 F.3d at 288 (citations omitted). As such, the court will balance the third factor as weighing in favor of the admission of Peperno's prior mail fraud conviction for impeachment purposes.

"The [fourth] factor concerns the significance of the defendant's credibility to the case. 'When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction.'" Caldwell, 760 F.3d at 288 (citation omitted). "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased." Id. (citation omitted). In this case, the testimony of Peperno will create a credibility contest between him and the government's witnesses, as detailed above. It will create an issue as to whether Peperno was part of the bribery scheme as alleged in the Indictment as well as the veracity of the hours of recordings of phone calls and meetings that the government indicates Peperno had with Individual #1 and Semenza in which he discusses the bribes. The jury will have to decide between Peperno's version of events and those provided in the recordings and by the witnesses presented by the government. Also, if Peperno testifies, he places his credibility directly at issue. *See* United States v. Beros, 833 F.2d 455, 463-64 (3d Cir. 1987). Thus, the credibility of all of the witnesses will be crucial to establish the government's case as well as defendant's defenses. As such, the court finds that the fourth Bedford factor

weighs in favor of admitting Peperno's prior fraud conviction. *See* United States v. Guerrier, 511 F.Supp.3d 556, 563 (M.D. Pa. 2021)

Thus, the four Bedford factors weigh in favor of allowing the government to use Peperno's prior mail fraud conviction to impeach his credibility if he testifies at trial. The court finds that the government has met its burden of showing that the probative value of Peperno's stated prior conviction outweighs its prejudicial effect under Fed.R.Evid. 609(a)(1)(B). Additionally, after the government completes its case-in-chief, the government's further use of Peperno's stated prior conviction will be limited to cross-examination, if he testifies. *See* Cooper, 2021 WL 3732789, *8 (holding that if defendant "testifies at trial, the Government may impeach his general credibility with the fact of his prior conviction and the nature of the crime.") (citing United States v. Jacobs, 44 F.3d 1219, 1224 n. 6 (3d Cir. 1995) ("Case law firmly establishes that it is proper to admit evidence of the type of felony involved in a prior conviction used for impeachment under Fed.R.Evid. 609(a)(1).").

No doubt that courts have allowed the government to refer to the nature of the defendant's prior felony convictions once they determined that the convictions were admissible for impeachment purposes under Rule 609(b)(1). Here, admission of Peperno's prior offense is not too similar to the instant charges he faces when being used by the government for impeachment purposes if Peperno

testifies, and it is not necessary in this case for the government to sanitize the offense by only referring to it as a prior felony conviction.

### IV.    CONCLUSION

For the aforementioned reasons, Peperno's motion *in limine* to preclude the government's use of evidence involving his prior mail fraud conviction and restitution obligation, **(Doc. 37)**, is **DENIED IN ITS ENTIRETY**. The government will be allowed to use the proffered evidence of Peperno's prior conviction and restitution obligation in its case-in-chief at trial, as intrinsic evidence for Counts 9-11, and as admissible under Rule 404(b) for Counts 7 and 8. Further, after the government completes its case-in-chief, the government will also be allowed to impeach Peperno with his prior conviction under FRE 609 should he testify at trial. An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Court**

**Dated: June 21, 2022**
21-287-03

27